IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 272, AFL-CIO<br><br>Plaintiff,<br><br>FIRSTENERGY GENERATION CORP<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>: CIVIL ACTION NO.<br>:<br>:<br>:<br>: |

## COMPLAINT

AND NOW comes the Plaintiff, International Brotherhood of Electrical Workers, Local 272, AFL-CIO, ("Union") by its attorney, Brian Kadlubek, and GILARDI OLIVER & LOMUPO who files the following Complaint to Vacate a Labor Arbitration Award averring as follows:

1.  This is an action to vacate an arbitration award, which is brought pursuant to Section 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. §185, et seq. ("the Act")

2.  The Plaintiff Union is a labor organization within the meaning of the Act, 29 U.S.C.S. §152(5) and is engaged in an industry affecting commerce.  The Union represents workers at the Bruce Mansfield Generation Plant in Shippingport, Pennsylvania in collective bargaining.  The Union's office is located in Midland, Pennsylvania.

3.  FirstEnergy Generation Corp ("FirstEnergy") is an Ohio Limited Liability Company and a public utility that owns and operates electric generation facilities, including the Bruce Mansfield Generation Plant located within the jurisdiction of this Court.  FirstEnergy is an

employer within the meaning of the Act, 29 U.S.C.S §152(2) and is engaged in an industry affecting commerce.

4. The Union and FirstEnergy were parties to a collective bargaining agreement ("Agreement") which became effective on December 5, 2009 and which was due to expire on February 15, 2013. By mutual agreement, the parties have extended the terms of the Agreement during all times relevant to this Complaint.

5. The Agreement provided the terms and conditions of employment for production and maintenance workers at the Bruce Mansfield Plant. (A true and correct copy of the Agreement is attached hereto as Exhibit 1.)

6. The Agreement provides in Article VIII ("Procedure for Adjusting Grievances") a detailed procedure for handling grievances which includes the right to proceed to arbitration before a neutral arbitrator.

7. Article VIII, Section 2(d) of the Agreement provides that the arbitrator "shall have no power to change, add to, or subtract from any of the provisions of this Agreement." Section 2(d) further states that the arbitrator's function "shall be limited to interpretation and application of this Agreement as written."

8. Article VI, Section 4(1) of the Agreement reads, "In filing job vacancies in beginning jobs, plant seniority govern where qualifications as defined herein are sufficient."

9. Article VI, Section 4(3) of the Agreement provides, "Qualifications shall be defined as follows:

      A. Performance of work assigned in a manner as safe and economical as possible under the circumstances.
      B. Knowledge and experience previously acquired on the job to be filled or on a comparable job. Temporary assignments made outside of seniority shall not be a qualifying factor.
      C. Relevant knowledge, experience, training or education.

        D.        Protection of the lawful interests of the Company.
        F.        Punctuality and observance of the rules and regulations of the Company.
        G.        Completion of On the Job Training/Task Performance Evaluations (OJT/TPE) for the classification immediately below the classification the employee is bidding on.

A grievance may be filed claiming the qualifications established by the Company on a job are unreasonable.

10. Article VI, Section 3 of the Agreement provides in part, "Before a senior applicant is bypassed the Company will discuss the matter with the Union."

11. In October of 2014, FirstEnergy awarded an open Power Plant Attendant position ("PPA positon") to a less senior employee thereby bypassing several more senior job bidders.

12. The PPA position is an entry level position in the operations department of the Bruce Mansfield Power Plant.

13. FirstEnergy failed to discuss its decision to bypass the more senior employees with the Union before awarding the job.

14. The Union filed a grievance under Article VIII alleging that FirstEnergy violated the terms of the Agreement when it refused to award the open PPA position to the most senior qualified applicant and for its failure to discuss the matter with the Union before doing so. FirstEnergy denied the grievance.

15. By its grievance, the Union challenged FirstEnergy's unilaterally established qualification standard for the PPA positon and, in particular, FirstEnergy's new requirement that PPA's have a two year degree in power plant technologies. FirstEnergy denied the grievance.

16. The grievance was not resolved and the parties agreed to arbitrate the matter before Arbitrator Michael E. Zobrak. A hearing, with a court reporter present, was held with Arbitrator Zobrak on July 16, 2015.

17. The parties agreed that the arbitrator was to determine "whether the Company violated the Agreement when it filled the PPA position with a less senior applicant."

18. It is undisputed that the two unsuccessful bidders who testified at the arbitration hearing were experienced Maintenance Mechanics who had been trained by FirstEnergy in Power Plant Operations and Systems. In fact, one of the bidders had previously been found qualified for other positions in the operations department and in the past was awarded a position in the operations department by FirstEnergy, though he did not accept them.

19. In is also undisputed that FirstEnergy failed to discuss its decision to bypass the more senior employees before awarding the job to the less senior employee.

20. After hearing the evidence, Arbitrator Zobrak denied the grievance. In his Award (attached hereto as Exhibit 2) Arbitrator Zobrak found that the Company has "the right to determine qualifications needed for a particular job, which may include educational background *and* experience." (Emphasis added) Arbitrator Zobrak went on to state, "The Union has the right to file a grievance in protest of qualification determinations that are unreasonable, *arbitrary and capricious*." (Emphasis added) In doing so, Arbitrator Zobrak changed the terms of the Agreement with respect to qualifications and the Union's right to challenge qualification standards imposed by FirstEnergy.

21. In his award, Arbitrator Zobrak incorrectly stated, "Article VI, Section 4 defines qualifications as including relevant education *and* experience" when in fact it defines qualifications as including "relevant knowledge, experience, training *or* education". (Emphasis added) By changing the terms of the Agreement, Arbitrator Zobrak concluded that the denied bidders were required to have a either a two year degree or specific work experience as a PPA to be qualified for the PPA positon when the Agreement requires only that they have the relevant

knowledge, experience, training *or* education to perform the job. (Emphasis added) Arbitrator Zobrak replaced "or" with "and" thereby modifying the plain terms of the Agreement.

22. Contrary to the plain language of Article VI, Section 3 of the Agreement, Arbitrator Zobrak concluded that because the more senior bypassed employees were not deemed qualified for the PPA position by FirstEnergy, the company had no obligation to discuss the matter with the Union. Again, Arbitrator Zobrak modified the terms of the Agreement by replacing "Before a senior applicant is bypassed…" with "Before a senior *qualified* applicant is bypassed…"

23. In light of the above, Arbitrator Zobrak's Award does not draw its essence from the Agreement, but is rather the improper exercise of his own brand of industrial justice.

24. In light of the above, Arbitrator Zobrak exceeded the powers granted to him by adding and modifying the terms of the Agreement in order to reach his determination.

25. As stated above, Arbitrator Zobrak's award represents a manifest disregard of the plain terms of the Agreement, is directly contrary to the plain meaning of the terms of the Agreement and is improperly premised on words not used in the Agreement.

26. By issuing the award he did, Arbitrator Zobrak showed a bias and impartiality toward FirstEnergy as no reasonable person provided with the plain terms of the Agreement and the facts presented would have concluded that the long term senior bargaining unit employees were not qualified for the entry level PPA positon and that FirstEnergy was not required to discuss its decision to bypass the more senior employees in favor of a new employee before doing so.

Wherefore, Plaintiff, the International Brotherhood of Electrical Workers, Local 272, AFL-CIO, prays:

1. That the February 29, 2016 Award of Arbitrator Michael Zobrak be vacated; and

2. That the Court grant such other relief as may be just and proper.

Respectfully submitted,

/s/ Brian T. Kadlubek

Brian T. Kadlubek, Esquire
PA I.D. #68177

GILARDI, OLIVER & LOMUPO
223 Fourth Avenue, 10th Floor
Pittsburgh, PA 15222
(412) 391-9770 – phone
(412) 232-3084 – fax
btkadlubek@lawgol.com

Date:  March 28, 2016